ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
**PANEL II**

| | | |
|---|---|---|
| **CONSEJO DE TITULARES DEL CONDOMINIO CERVANTES 10**<br><br>Apelado<br><br>v.<br><br>**EDWIN PAGÁN BONILLA**<br><br>Apelante | TA2026AP00382 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.:<br>**SJ2024CV07121**<br><br>Sobre:<br>Cobro de Dinero – Ordinario |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2026.

Comparece ante este foro revisor, el Sr. Edwin Pagán Bonilla (señor Pagán Bonilla o parte apelante) y nos solicita que revoquemos la *Sentencia* emitida el 11 de marzo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* la *Solicitud de Sentencia Sumaria* incoada por el Consejo de Titulares del Condominio Cervantes 10 (Consejo de Titulares o parte apelada).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 31 de julio de 2024, el Consejo de Titulares incoó una *Demanda* sobre cobro de dinero en contra del señor Pagán Bonilla. En esencia, solicitó el pago de una deuda acumulada por concepto de cuotas de mantenimiento y/o cuotas de seguro comunal de dos

(2) apartamentos que estaban vencidas y no pagadas. Alegó que, a julio de 2024, el señor Pagán Bonilla adeudaba la suma total de $47,794.48.

Posteriormente, el 25 de octubre de 2024, el Consejo de Titulares presentó una *Demanda Enmendada* con el propósito de añadir una nueva partida en su reclamación. Según alegó, luego de radicar la demanda original, se aprobó la renovación de la póliza de seguro comunal. De manera que, al señor Pagán Bonilla le correspondía pagar una suma adicional de $1,169.50 por el apartamento 101 y otra de $983.51 por el apartamento 103. Así, manifestó que la deuda total de ambos apartamentos ascendía a la suma total de $50,650.39.

Luego de varias incidencias procesales innecesarias pormenorizar, el 6 de diciembre de 2024, el señor Pagán Bonilla presentó su *Contestación a Demanda Enmendada*. En esta, cuestionó la capacidad jurídica del Consejo de Titulares para instar la demanda de epígrafe pues, a su juicio, el mismo no estaba constituido conforme a la Ley 129 de 16 de agosto de 2020, según enmendada, también conocida como Ley de Condominios de Puerto Rico, 31 LPRA sec. 1291 *et seq.* (Ley de Condominios). Por tal razón, aseveró que la demanda debía ser desestimada por falta de legitimación activa. Sostuvo además que, al adquirir la propiedad, no fue informado de la existencia de deuda alguna, por lo que negó la misma y reclamó que no estaba vencida, líquida ni exigible. A su vez, manifestó que, de existir alguna deuda, no era por las cuantías reclamadas ni procedía la imposición de penalidad alguna.

Más adelante, el 15 de diciembre de 2025, el Consejo de Titulares presentó una *Solicitud de Sentencia Sumaria*. Esencialmente planteó que procedía, como cuestión de derecho, que se dictara sentencia sumaria a su favor, decretándose que existía una deuda líquida, vencida y exigible sobre cuotas de

mantenimiento. Planteó que, la única controversia subsistente en el pleito giraba en torno a si el señor Pagán Bonilla estaba obligado a pagar cuotas de mantenimiento y, por ende, si debía pagar la deuda acumulada.

Como parte de los hechos esenciales sobre los cuales alegó no existía controversia sustancial, incluyó, entre otros asuntos, que, en el momento en que el señor Pagán Bonilla adquirió sus apartamentos, estos tenían una deuda acumulada. Adujo que, el señor Pagán Bonilla nunca pagó las cuotas de mantenimiento y/o cuotas de seguro comunal asociadas a dichos apartamentos. Además, sostuvo que, debido a la falta de pago, y luego de realizar las debidas advertencias, se suspendieron los servicios del señor Pagán Bonilla. No obstante, indicó que el señor Pagán Bonilla se reconectó por lo que se le impuso el triple de penalidad establecido en el Artículo 59 de la Ley de Condominios, *supra.* Finalmente, puntualizó que se realizaron diversos requerimientos de cobro de dinero al señor Pagán Bonilla sin que los mismos surtieran efecto.

El señor Pagán Bonilla no presentó oposición a la solicitud de sentencia sumaria.[1]

Así las cosas, el 11 de marzo de 2026, notificada al día siguiente, el foro de Instancia emitió la *Sentencia* que hoy revisamos. Mediante la referida determinación, el TPI concluyó que el señor Pagán Bonilla no pagó la deuda preexistente al momento de adquirir ambos apartamentos y tampoco pagó las cuotas de mantenimiento ni las cuotas de seguro comunal. Por tal razón, declaró *Con Lugar* la *demanda* de epígrafe y, en consecuencia, ordenó al señor Pagán Bonilla a pagar la suma de $56,562.80 por concepto de cuotas de

---

[1] Por medio de la *Orden* del 16 de diciembre de 2025, la cual fue aclarada luego mediante *Orden* del 30 de diciembre de 2025, el TPI le concedió veinte (20) días para fijar su posición. No obstante, debido a que el término concedido venció sin que el señor Pagán Bonilla presentara escrito alguno, el Consejo de Titulares instó una solicitud adicional para que se diera por sometido el asunto y se atendiera sin la posición de la parte demandada. Así las cosas, el 6 de febrero de 2026, el foro primario dictó una *Orden* dando por sometido el asunto.

mantenimiento, más las que se siguieran acumulando a partir de febrero de 2026.

A su vez, señaló que la temeridad del señor Pagán Bonilla ocasionó que el Consejo de Titulares se viera obligado a recurrir al cobro de lo adeudado por la vía judicial, teniendo que incurrir en los gastos y costas inherentes al trámite judicial. Por consiguiente, impuso el pago de costas, gastos y la suma de $3,000.00 por concepto de honorarios de abogado. En su dictamen, el Tribunal consignó las siguientes determinaciones de hechos materiales sobre los cuales entendió que no existía controversia sustancial:

1. El Condominio Cervantes 10 fue sometido al Régimen de Propiedad Horizontal mediante la escritura número 29 del 11 de septiembre de 1991 ante el notario público José W. Cartagena.

2. Segismundo Quiñones Ramírez de Arellano es el titular de los apartamentos 203 y 205 del Condominio Cervantes 10 y es el Director del Consejo de Titulares del Condominio Cervantes 10.

3. La parte demandada, Edwin Pagán Bonilla, adquirió el apartamento 101 el 23 de diciembre de 2020 mediante la escritura número 6 otorgada ante el notario público Reynaldo Rodríguez Peña.

4. La parte demandada, Edwin Pagán Bonilla, adquirió el apartamento 103 el 21 de mayo de 2021 mediante la escritura número 1 otorgada ante el notario público Reynaldo Rodríguez Peña.

5. La descripción registral de ambos apartamentos son los siguientes:

   DESCRIPCIÓN: Propiedad Horizontal: CONDOMINIO CERVANTES # 10 de Santurce Norte. Apartamento: 101. Cabida: 571.52 Pies Cuadrados. LINDEROS: NORTE, En una distancia lineal total de cuarenta y un pies siete pulgadas (41'-7") en tres (3) distancias interrumpidas, a saber, ocho pies dos pulgadas (8'-2"), treinta y un pies (31') y dos pies cinco pulgadas (2'-5'') con el apartamento ciento dos (102). SUR, En una distancia lineal total de cuarenta y un pies siete pulgadas (41'-7") en tres (3) distancias interrumpidas, a saber, ocho pies dos pulgadas (8'-2"), treinta y un pies (31') y dos pies cinco pulgadas (2'-5'') con área común del edificio, a saber, el patio lateral sur que colinda con el solar de Sara Jiménez de Gallardo y con la escalera lateral que da acceso al apartamento doscientos tres (203). ESTE, En una distancia lineal total de quince pies tres pulgadas (15'-3") en tres (3) distancias interrumpidas, a saber, un pie seis pulgadas (1'-6"), once pies tres pulgadas (11'-3") y dos pies seis pulgadas (2'-6'') con un área común del edificio, a saber, el patio del frente que da a la Calle Cervantes. OESTE, En una distancia lineal total de quince pies tres pulgadas (15'-3") en dos (2) distancias interrumpidas, a saber, ocho pies (8') y siete pies tres pulgadas (7'-3") colindando con el apartamiento ciento tres

(103). Apartamento ciento uno (101). Apartamento residencial de un solo nivel, localizado en el primer piso del Condominio Cervantes diez (10) sito en la Calle Cervantes número diez (10) en el Barrio Condado de Santurce, San Juan, Puerto Rico. Contiene un área de sala-comedor-dormitorio, cocina, dos (2) closets, un baño y un balcón cubierto donde se encuentra la puerta que da acceso a los patios frontales y laterales que dan acceso, a su vez, a la calle. Le corresponde una participación de once punto cincuenta y siete por ciento (11.57%) en los elementos comunes generales y se le asignó el estacionamiento marcado con la letra "A".

DESCRIPCIÓN: Propiedad Horizontal: CONDOMINIO CERVANTES # 10 de Santurce Norte. Apartamento: 103. Cabida: 480.38 Pies Cuadrados. sito en la Calle Cervantes número diez (10) en el Barrio Condado de Santurce, San Juan, Puerto Rico. Tiene un área superficial privada de construcción de aproximadamente cuatrocientos ochenta punto treinta y ocho pies cuadrados (480.38 p/c). En lindes por el NORTE en una distancia lineal total de treinta y un pies seis pulgadas (31'-6") en cuatro (4) distancias interrumpidas, a saber, once pies nueve pulgadas (11'-9"), dos pies tres pulgadas (2'-3"), cuatro pies nueve pulgadas (4-9") y doce pies nueve pulgadas (12'-9"), colindando con el apartamiento ciento dos (102); por el SUR en una distancia lineal total de treinta y un pies seis pulgadas (31'- 6") con el patio lateral sur del solar que a su vez colinda con el solar de Sara Jiménez de Gallardo; por el ESTE en una distancia lineal total de quince pies tres pulgadas (15'-3") colindando con el apartamiento ciento uno (101); y por el OESTE en una distancia lineal total de quince pies tres pulgadas (15'- 3") colindando con áreas comunes del edificio, a saber, el patio trasero del solar que a su vez colinda con Domestic & Foreign Missionary Society of the P.E. Church of the United States of America. Contiene área de salacomedor-cocina, donde se encuentro la puerta que da acceso al patio lateral sur del edificio que, a su vez, da acceso a la calle, una habitacióndormitorio con closet, un closet en el pasillo que da a la habitación-dormitorio y un baño. Le corresponde una participación nueve punto setenta y tres por ciento (9.73%) en los elementos comunes generales y se le asigno el estacionamiento marcado con la letra "E".

6. Dichos apartamentos tienen una cuota de mantenimiento combinada asignada de $234.30 mensuales.

7. Cuando la parte demandada adquirió los apartamentos, estos ya tenían una deuda acumulada.

8. La parte demandada no pagó la deuda preexistente al momento de adquirir los apartamentos.

9. La parte demandada no paga las cuotas de mantenimiento ni las cuotas de seguro comunal de dichos apartamentos.

10. Ante la falta de pago, el 8 de agosto de 2022 se le notificó al demandado mediante correo certificado un aviso de cobro de dinero y advertencia de que, de no pagar, se le estarían suspendiendo los servicios de electricidad y agua. Esta carta le fue notificada por el agente administrador Jorge L. Colón Miranda.

11. La parte demandada no pagó, por lo que se le suspendieron los servicios.

12. La parte demandada se reconectó por lo que se impuso el triple de penalidad que establece la Ley de Condominios de Puerto Rico, supra, en el Artículo 59. Al momento en que se reconectó tenía una deuda de $11,128.57, por lo que la penalidad fue de $33,385.71.

13. La deuda acumulada a noviembre de 2025 por cuotas de mantenimiento era de $51,583.28, por ambos apartamentos, incluyendo las penalidades aplicadas. Adicional a esta suma de dinero, también adeuda su participación por la cuota del seguro comunal de la póliza comunal 2024-25, por el apartamento 101 la suma de $1,169.50 y por el apartamento 103 la suma de $983.51 y la póliza correspondiente al periodo 2025-26 para ambos apartamentos por la suma de $2,123.61.

14. A febrero de 2026, tomando en cuenta, que la cuota combinada de los apartamentos de la parte demandada es de $234.30, la deuda de cuotas de mantenimiento es de $52,286.18.

15. El total adeudado a febrero de 2026, incluyendo las pólizas de seguro comunal, es de $56,562.80.

16. Los requerimientos de pago a la parte demandada han sido infructuosos, por lo que la parte demandante se vio obligada a presentar la demanda de cobro de dinero en el caso de epígrafe.

17. A pesar de haberse requerido, mediante esta demanda, el pago de las cuotas de mantenimiento, la parte demandada, al día de hoy, sigue sin efectuar los pagos que, conforme a la Ley de Condominios de Puerto Rico, Ley 129-2020, tiene que efectuar.

Inconforme, el 13 de abril de 2026, la parte apelante acudió ante este foro revisor mediante un recurso de *Apelación*. En este alega que el foro primario cometió los siguientes errores:

Erró el Tribunal de Primera Instancia al dictar sentencia sumaria a pesar de que la prueba sometida por la propia parte promovente presentaba deficiencias sustanciales, incluyendo la ausencia de evidencia técnica sobre la alegada reconexión, la falta de un desglose contemporáneo y verificable de la deuda atribuible a cada unidad al momento de las transmisiones, y la inexistencia de estados de cuenta depurados para los periodos relevantes, que impedían concluir, como cuestión de derecho, que no existía controversia genuina de hechos materiales.

Erró el Tribunal de Primera Instancia al confirmar la imposición de una penalidad triple de $33,385.71, bajo el Artículo 59 de la Ley 129-2020, sin que constara en el expediente prueba de la ejecución efectiva de la suspensión de servicios ni de la alegada reconexión no autorizada.

Erró el Tribunal de Primera Instancia al condenar al Apelante por la totalidad de la deuda reclamada, incluyendo un balance preexistente no desglosado, sin depurar la composición de dicha deuda conforme al

Artículo 60 de la Ley 129-2020 y a la evidencia documental y contable necesaria para su aplicación.

Erró el Tribunal de Primera Instancia al resolver sumariamente la controversia sin abordar la impugnación sobre la validez de la representación del Consejo de Titulares, específicamente sobre la eficacia de la enmienda reglamentaria que creó la figura de "Director Único" mediante una asamblea con un solo votante.

Erró el Tribunal de Primera Instancia al no evaluar si el balance previo acumulado sin desglose pudiera incluir partidas fuera del término prescriptivo aplicable, condena que requería, como mínimo, una depuración que el mecanismo de sentencia sumaria no permitía.

Erró el Tribunal de Primera Instancia al imponer $3,000 en honorarios de abogado por temeridad cuando el Apelante tenía defensas sustanciales y legítimas.

El 14 de mayo de 2026, la parte apelada compareció ante este foro intermedio mediante escrito intitulado *Alegato Parte Apelada*.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.

### A.

La Regla 36 de Procedimiento Civil dispone el mecanismo extraordinario y discrecional de la sentencia sumaria. 32 LPRA, Ap. V, R. 36. El propósito principal de este mecanismo procesal es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos materiales, por lo que puede prescindirse del juicio plenario. *Banco Popular de Puerto Rico v. Cable Media of Puerto Rico, Inc. y otro*, res. el 7 de enero de 2025, 2025 TSPR 1; *Serrano Picón v. Multinational Life Ins*, 212 DPR 981 (2023).[2] Los tribunales pueden dictar sentencia sumaria respecto a una parte de una reclamación o sobre la totalidad de esta. 32 LPRA Ap. V, R. 36.1; *Meléndez González v. M. Cuebas*, 193 DPR 100 (2015). La sentencia sumaria procederá si las alegaciones,

---

[2] Véase, además: *Oriental Bank v. Caballero García*, 212 DPR 671 (2023); *Ferrer et. al. v. PRTC*, 209 DPR 574, 580-581 (2022); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019); *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010).

deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, junto a cualquier declaración jurada que se presente, si alguna, demuestran que no hay controversia real y sustancial sobre algún hecho esencial y pertinente y que, como cuestión de derecho, procede hacerlo. *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601 (2023).

El promovente debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes sobre la totalidad o parte de la reclamación. 32 LPRA Ap. V, R. 36.1; *Universal Ins. y otro v. ELA y otros*, 211 DPR 455 (2023). La controversia sobre los hechos esenciales que genera el litigio tiene que ser real, no especulativa o abstracta. Es decir, tiene que ser de naturaleza tal que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. *Ramos Pérez v. Univisión, supra*, págs. 213-214, seguido en *Meléndez González v. M. Cuebas, supra*, pág. 110.

Nuestro ordenamiento civil y su jurisprudencia interpretativa dispone que se deben cumplir unos requisitos de forma, los cuales deben satisfacerse al momento de presentar una solicitud de sentencia sumaria. Estos requisitos son: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria, (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del Tribunal; (5) las razones por las cuales se debe dictar sentencia, argumentando el derecho aplicable,

y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

Por su parte, le corresponde a la parte promovida refutar dicha moción a través de declaraciones juradas u otra documentación que apoye su posición. Esto es, la parte que se opone debe proveer evidencia sustancial de los hechos materiales que están en disputa. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). El hecho de no oponerse a la solicitud de sentencia sumaria no implica necesariamente que ésta proceda si existe una controversia legítima sobre un hecho material. **Sin embargo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a 'demostrar que [tiene] prueba para sustanciar sus alegaciones'".** (Énfasis nuestro). La Regla 36.5 de Procedimiento Civil, dispone que de no producirse por parte del opositor una exposición de hechos materiales bajo juramento, deberá dictarse sentencia sumaria en su contra. 32 LPRA Ap. V, R. 36.5; *Ramos Pérez v. Univisión, supra*, págs. 215-216.

La Regla 36.4 de Procedimiento Civil, establece que, si no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la moción de sentencia sumaria, y, por tanto, es necesario celebrar juicio, será obligatorio que el Tribunal en su dictamen determine los hechos esenciales sobre los cuales no haya controversia sustancial y aquellos que sí se encuentran genuinamente en controversia. 32 LPRA Ap. V, R.36.4.

Cónsono con lo anterior, nuestro estado de derecho le impone y exige al TPI, exponer los hechos materiales y esenciales que están en controversia, así como los que no lo están, independientemente de cómo resuelvan una solicitud de sentencia sumaria. *Meléndez González v. M. Cuebas, supra*, pág. 117. Al evaluar la solicitud de sentencia sumaria, el juzgador deberá: (1) analizar los documentos

que acompañan la moción solicitando la sentencia sumaria, los incluidos con la moción en oposición y aquellos que obren en el expediente judicial y; (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913-914 (1994).

Por último, en *Meléndez González v. M. Cuebas, supra*, el Tribunal Supremo de Puerto Rico estableció el estándar de revisión que debe utilizar este foro apelativo intermedio al revisar denegatorias o concesiones de mociones de sentencia sumaria. Conforme a ello, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004). Nuestro Más Alto Foro ha pautado que este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. *Meléndez González v. M. Cuebas, supra*, págs. 118-119. Es decir, debemos revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. *Íd.*

**B.**

La Ley Núm. 129 de 16 de agosto de 2020, según enmendada, conocida como la *Ley de Condominios de Puerto Rico*, 31 LPRA secs. 1921 *et seq.*, se aprobó con el propósito de viabilizar la propiedad individual sobre un apartamento, que forma parte de un inmueble

sometido al Régimen de Propiedad Horizontal, de manera que cada titular tenga el pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA sec. 1921a. En su Exposición de Motivos, el estatuto también hace referencia a que este se aprobó con el propósito de establecer un régimen jurídico que facilitara la vida en convivencia y propiciara la disponibilidad de viviendas en un área restringida de terreno. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Véase, además, Exposición de Motivos de la Ley de Condominios, *supra.*

En miras a la consecución de su propósito, la Ley de Condominios, *supra*, contempla la convergencia de diversos actores en el manejo del Régimen de Propiedad Horizontal. Entre estos se encuentra la figura del Consejo de Titulares. La Ley de Condominios, *supra*, define dicho ente como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921b. Así, el Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. 31 LPRA sec. 1922t. Conforme a ello, sus resoluciones y acuerdos serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio, siempre y cuando hayan sido adoptados en asambleas debidamente convocadas y constituidas. *Íd.*

El Consejo de Titulares posee, por virtud de ley, ciertos poderes y deberes, entre los cuales se destaca la facultad para aprobar el presupuesto anual y los estados financieros anuales, así como para intervenir y tomar decisiones sobre asuntos de interés general y tomar aquellas medidas necesarias y convenientes para mejorar el servicio común. 31 LPRA sec. 1922u.

Por otra parte, nuestro más Alto Foro ha reiterado la importancia de pagar las cuotas de mantenimiento como principio medular en el esquema establecido por la Ley de Condominios, *supra*, para el adecuado sostenimiento de un inmueble sometido al Régimen de Propiedad Horizontal. *Asoc. Cond. Balcones S. Ma. v. Los Frailes*, 154 DPR 800, 815 (2001). En ese sentido, ha expresado que "[e]l pago de las cuotas de mantenimiento constituye un elemento fundamental para el sostenimiento de la vida en comunidad y para lograr el disfrute pleno y la coexistencia". *Con Tit. Centro Int'l Torre II v. PRCI*, 210 DPR 403, 415 (2022). Asimismo, ha puntualizado que las cuotas que los titulares vienen obligados a satisfacer cumplen la función de preservar las mejores condiciones de los elementos comunes, facilitar su uso y, sobre todo, garantizar el buen funcionamiento del régimen. De manera que, sin la aportación proporcional a las expensas del inmueble, el régimen no podría sobrevivir y se derrotaría la política pública al respecto. *Asoc. Cond. Balcones S. Ma. v. Los Frailes*, *supra*, pág. 815, citando a *Álvarez v. J. Dir. Cond. Villa Caparra*, 140 DPR 763, 769 (1996).

En lo pertinente, el Artículo 39(b)(6), de la Ley de Condominios, *supra*, establece que:

[…]

Todo titular deberá contribuir con arreglo al porcentaje de participación fijado a su apartamento en la escritura de constitución, y a lo especialmente establecido, conforme al inciso (f) del Artículo 49 de esta Ley, a los gastos comunes para el adecuado sostenimiento del inmueble, sus servicios, tributos, cargas y responsabilidades, incluidas las derramas, primas de seguros, el fondo de reserva, o cualquier otro gasto debidamente aprobado por el Consejo de Titulares.

31 LPRA sec. 1922k.

A esos efectos, agrega el precitado artículo que "[l]a Junta de Directores queda expresamente autorizada a presentar acciones interdictales a nombre del Consejo de Titulares contra aquellos que cometan infracciones a las reglas establecidas en esta Ley. *Íd.*

De igual forma, la Ley de Condominios, *supra*, dispone que los titulares de los apartamentos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales del inmueble. 31 LPRA sec. 1923d. Así, el propio estatuto permite que, ante el incumplimiento de un titular con el pago por concepto de cuotas de mantenimiento para gastos comunales, la deuda pueda ser reclamada judicialmente luego de que se le haya requerido mediante correo certificado con acuse de recibo y éste no haya cumplido el pago en el plazo de vencimiento. *Íd.*

En cuanto al alcance de pago de las cuotas de mantenimiento por un adquiriente voluntario, la Ley de Condominios, *supra*, establece en lo pertinente que:

> La obligación del titular de un apartamento por su parte proporcional de los gastos comunes constituirá un gravamen sobre dicho apartamento. Por lo tanto, luego de la primera venta, el adquirente voluntario de un apartamento será solidariamente responsable con el transmitente del pago de las sumas que éste adeude, a tenor con el Artículo 59, hasta el momento de la transmisión, sin perjuicio del derecho del adquirente a repetir contra el otro otorgante, por las cantidades que hubiese pagado como deudor solidario. [...].

31 LPRA sec. 1293e.

Es decir que el adquiriente voluntario será responsable del pago de todas las cuotas de mantenimiento adeudadas al momento de adquirir la propiedad; toda vez que conociendo la deuda decide asumirla y comprar el inmueble por considerarlo una transacción beneficiosa.

Por otra parte, en lo pertinente al asunto ante nuestra consideración, el Artículo 50 de la Ley de Condominios, *supra*, dispone lo siguiente:

> El Consejo de Titulares se reunirá por lo menos una (1) vez al año para aprobar el presupuesto anual y los estados financieros, y en las demás ocasiones que convoque el Director, el Presidente de la Junta de Directores, una mayoría de los miembros de la Junta de Directores, o la quinta (1/5) parte de los titulares o un

número de éstos cuyos apartamentos representen al menos el veinte por ciento (20%) de los porcentajes de participación en las áreas comunes. La convocatoria por titulares requerirá notificación previa no menor a quince (15) días de la fecha seleccionada para la celebración de la asamblea.

31 LPRA sec. 1922v.

En cuanto al derecho al voto y la representación, el Artículo 51 de la Ley de Condominios, *supra*, establece que la asistencia a las asambleas del Consejo de Titulares será personal o por representación legal o voluntaria, bastando para acreditar esta última un escrito firmado por el titular. 31 LPRA sec. 1922w. Añade el precitado artículo que, la representación en las asambleas del Consejo de Titulares en los que exista por lo menos un apartamento dedicado a vivienda, la podrán ejercer solamente personas mayores de edad que, a su vez, sean titulares que no adeuden tres (3) o más cuotas de mantenimiento, y/o derramas y/o multas vencidas por más de sesenta (60) días, y/o primas del seguro matriz […]. *Íd.* Así, aquellos titulares [morosos] […] quedarán temporalmente privados de ejercer su derecho al voto, prestar su consentimiento o expresarse en las asambleas del Consejo de Titulares […]". *Íd.*

Ahora bien, el Artículo 65 de la Ley de Condominios, *supra*, permite que las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador, así como los acuerdos del Consejo de Titulares, puedan ser impugnados. 31 LPRA sec. 1923j. En el caso de los titulares que sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, **la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor**. (Énfasis nuestro). Sobre la impugnación, dispone textualmente el referido artículo que:

> … [S]e tendrán treinta (30) días contados a partir de la fecha en que se tomó dicho acuerdo o determinación, si se hizo en su presencia, o dentro de los treinta (30) días siguientes a la fecha en que recibe la notificación del acuerdo, si el titular afectado no estuvo presente en el momento en que se llegó a tal acuerdo o determinación.

En el caso de que la acción de impugnación de acuerdos, acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador o del Consejo de Titulares, constituyan violaciones a las disposiciones de esta Ley, de la escritura matriz o del reglamento del condominio, prescribirá a los dos (2) años.

### III.

Por tratarse de una sentencia sumaria, debemos evaluar *de novo* la solicitud a favor de tal proceder, en unión a la documentación que surge del expediente. Así pues, examinamos la *Solicitud de Sentencia Sumaria* presentada por la parte apelada. Adelantamos que, luego de un análisis detenido del expediente, así como de la normativa aplicable, concluimos que los errores señalados por la parte apelante no se cometieron. Por tanto, no incidió el foro primario al conceder el remedio sumario en cuestión. Veamos.

En su primer señalamiento de error, la parte apelante arguye que, erró el foro primario al dictar sentencia sumaria a pesar de que la prueba sometida por la parte promovente presentaba deficiencias sustanciales, tales como: ausencia de evidencia técnica sobre la alegada reconexión, falta de un desglose verificable de la deuda atribuible a cada unidad al momento de las transmisiones e inexistencia de estados de cuenta depurados para los períodos relevantes. A su vez, mediante su segundo señalamiento de error, sostiene que se equivocó el foro de instancia al confirmar la imposición de una penalidad triple de $33,885.71 bajo el Artículo 59 de la Ley de Condominios, *supra*, sin que constara en el expediente prueba de la ejecución efectiva de la suspensión de servicios ni de la alegada reconexión no autorizada.

En su tercer planteamiento de error, la parte apelante arguye que, erró el foro primario al condenarle a pagar la totalidad de la deuda reclamada, sin depurar la composición de esta conforme al Artículo 60 de la Ley de Condominios, *supra*, y a la evidencia

documental y contable necesaria para su aplicación. Aduce que, la aplicación del referido artículo presuponía que el condominio acreditara con rigor la existencia, cuantía y composición de la deuda que poseía cada unidad al momento de la transmisión. Sin embargo, puntualiza que, en su caso, no existía un documento contemporáneo a la transmisión que identificara y cuantificara la deuda preexistente de cada unidad, información que, según alega, era esencial para aplicar la responsabilidad solidaria con la precisión que una sentencia sumaria exige. Por lo que, concluye que, mediante la sentencia apelada, el foro primario aceptó una cifra global que incluía cuotas, penalidades e intereses de períodos y titulares distintos, sin que la parte apelada demostrara con la precisión necesaria qué porción era exigible a la parte apelante y bajo qué concepto.

Por su parte, la parte apelada arguye que la parte apelante incumplió con su deber bajo la Regla 36.3(c) de Procedimiento Civil, *supra*, toda vez que no presentó oposición alguna a la solicitud de sentencia sumaria. Señala que las supuestas deficiencias en la prueba documental no fueron identificadas ni controvertidas ante el foro primario. Conforme a ello, sostiene que la parte apelante no puede levantar por primera vez ante este tribunal intermedio impugnaciones fácticas que omitió presentar ante el tribunal de instancia. Aduce, además, que la parte apelante no puede descansar en meras alegaciones para oponerse a un petitorio sumario.

En cuanto al asunto del desglose de la deuda y la composición del balance prexistente, la parte apelada resalta que la parte apelante es un adquiriente voluntario según definido en el Artículo 3 de la Ley de Condominios, *supra.* Reseña que la precitada ley le provee al adquiriente voluntario un mecanismo de protección contra deudas preexistentes desconocidas permitiéndole exigir una

certificación de deuda. Así, aduce que es el adquiriente, en su propio interés, quien debe exigir dicha certificación antes de firmar. Por lo que, reitera que, habiendo renunciado la parte apelante a exigir la certificación de deuda que el ordenamiento pone a su disposición, no puede pretender que sea el Consejo de Titulares quien cargue con las consecuencias de su propia desidia.

Asimismo, asevera que la prueba acompañada a la solicitud de sentencia establece cada uno de los presupuestos del Artículo 59 de la Ley de Condominios, *supra.* Aduce también que, la pretensión de la parte apelante de que se le exija al Consejo de Titulares producir "orden de trabajo, factura de la compañía que ejecutó la desconexión, certificación del técnico, fotografía o inspección" es una exigencia que la referida ley no impone y que, aun de imponerse, debió ventilarse oportunamente mediante escrito en oposición.

De entrada, es meritorio puntualizar que no nos persuaden los primeros tres señalamientos de error. En primer lugar, surge del expediente que la parte apelada presentó una *Solicitud de Sentencia Sumaria* acompañada de aquellos documentos que entendió pertinentes para sustentar los hechos esenciales de su reclamación. Sin embargo, la parte apelante no presentó escrito alguno en oposición al petitorio sumario conforme exige la Regla 36.3 de Procedimiento Civil, *supra.*

Como sabemos, es norma reiterada que la parte que se opone a una solicitud de sentencia sumaria no puede descansar en meras negaciones contenidas en sus alegaciones pues, por el contrario, viene obligada a controvertir los hechos propuestos por la parte promovente en forma tan detallada y específica como lo haya hecho la parte promovente señalando, a su vez, la evidencia que sustenta su posición. La ausencia de una oposición adecuada tiene el efecto de dejar incontrovertidos aquellos hechos debidamente apoyados

por evidencia admisible y, en ese caso, el foro primario dictará la sentencia sumaria en su contra si procede.

En el presente caso, las alegadas deficiencias que ahora señala la parte apelante respecto a la prueba documental sometida por la parte apelada, incluyendo la ausencia de evidencia técnica sobre la reconexión, la falta de estados de cuenta depurados o la insuficiencia del desglose de la deuda, no fueron oportunamente planteadas ante el foro primario. Por consiguiente, la parte apelante no puede pretender crear controversias fácticas, por primera vez en apelación, que omitió presentar ante el foro primario.

De igual forma, carece de mérito el argumento relacionado con la aplicación del Artículo 60 de la Ley de Condominios, *supra*. Del expediente se desprende que la parte apelante adquirió voluntariamente los apartamentos objeto del litigio. Como correctamente señala la parte apelada, la Ley de Condominios, *supra,* provee al adquiriente voluntario un mecanismo específico para protegerse de posibles deudas preexistentes mediante la obtención de una certificación de deuda previo a la adquisición. Habiendo optado por no requerir dicha certificación, la parte apelante no puede trasladar al Consejo de Titulares las consecuencias de su omisión ni utilizar dicha circunstancia para derrotar una reclamación que, de otra forma, fue sustentada adecuadamente.

Asimismo, tampoco erró el foro primario al conceder la penalidad contemplada en el Artículo 59 de la Ley de Condominios, *supra*. La prueba sometida por la parte apelada fue suficiente para establecer los presupuestos necesarios para la imposición de dicho remedio. La exigencia formulada por la parte apelante respecto a la presentación de órdenes de trabajo, fotografías, certificaciones técnicas o documentos similares no surge del texto de la ley y, en todo caso, constituía un planteamiento que debió ser

oportunamente presentado en oposición al petitorio sumario. Ante la ausencia de prueba que controvirtiera los hechos propuestos por la parte apelada, el foro primario actuó correctamente al resolver la controversia de manera sumaria.

En su cuarto señalamiento de error, la parte apelante argumenta que incidió el foro de instancia al resolver sumariamente la controversia sin abordar la impugnación sobre la validez de la representación del Consejo de Titulares, específicamente sobre la eficacia de la enmienda reglamentaria que creó la figura de "Director Único" mediante una asamblea con un solo votante. En ese sentido, manifiesta que la enmienda al reglamento que creó dicha figura fue aprobada mediante una asamblea en la que únicamente participó y votó un (1) titular. Ello aun cuando la Ley de Condominios, *supra*, requiere el voto de dos terceras partes (2/3) de todos los titulares que reúnan dos terceras partes (2/3) de las participaciones en áreas comunes. Plantea que la postura de la parte apelada respecto a que la privación de voto bajo el Artículo 51 de la Ley de Condominios, *supra*, reducía el universo de "todos los titulares" a uno (1) solo era una cuestión susceptible de controversia. Así, reiteró que existía una controversia sustancial sobre la autoridad de quien actuaba en nombre del Consejo de Titulares y sobre los actos administrativos derivados de dicha estructura, incluyendo la aprobación de presupuestos y la fijación de cuotas.

Por su parte, la parte apelada arguye que la convocatoria fue válida y que el cómputo del voto fue correcto. Además, sostiene que la impugnación levantada por la parte apelante fue presentada fuera de tiempo y de foro toda vez que el Artículo 65 de la Ley de Condominios, *supra*, asignó jurisdicción primaria y exclusiva al Departamento de Asuntos al Consumidor y fijó un término jurisdiccional y la parte apelante no cumplió con ello. *Le asiste razón.*

Observamos que el planteamiento de la parte apelante constituye una impugnación directa de los acuerdos y determinaciones adoptados por el Consejo de Titulares durante la asamblea celebrada el 7 de noviembre de 2022. Sin embargo, según reseñado anteriormente, la Ley de Condominios, *supra*, establece un procedimiento específico para impugnar los acuerdos y determinaciones adoptados por el Consejo de Titulares, así como un término jurisdiccional para presentar dicha reclamación ante el foro administrativo competente. Del expediente no surge que, la parte apelante haya acudido oportunamente al procedimiento dispuesto por ley para cuestionar la validez de la enmienda reglamentaria aprobada el 7 de noviembre de 2022. Por ello, aun asumiendo la corrección de los planteamientos sustantivos de la parte apelante respecto al cómputo de votos o a la interpretación de los requisitos estatutarios para la aprobación de la enmienda, lo cierto es que tales asuntos no fueron oportunamente planteados mediante el procedimiento establecido por la Ley de Condominios, *supra*. Por ende, el foro primario no incidió al abstenerse de considerar dicha impugnación como fundamento para denegar la solicitud de sentencia sumaria.

De otra parte, en su quinto planteamiento de error, la parte apelante aduce que erró el foro primario al no evaluar si el balance previo acumulado sin desglose pudiera incluir partidas fuera del término prescriptivo aplicable. Plantea que, en este caso, la prescripción no era autoevidente a primera vista. Sin embargo, señala que el balance adeudado podría incluir partidas que se remontan a la gestión del titular anterior encontrándose fuera del término prescriptivo aplicable bajo el Código Civil de Puerto Rico. Así, arguye que la condena global incluye un balance cuya composición es desconocida y esa opacidad impedía resolver

sumariamente si todas las partidas eran jurídicamente exigibles, lo cual refuerza la necesidad de depurar la deuda en juicio.

La parte apelada arguye que, si la parte apelante entendía que existían partidas concretas prescritas, su carga procesal era levantar la defensa en oposición a la *Solicitud de Sentencia Sumaria,* identificar las partidas específicas que reputaba prescritas y producir la evidencia correspondiente. Añade también que la defensa de prescripción cede ante el hecho de que la parte apelante es un adquiriente voluntario consignado en el Artículo 60 de la Ley de Condominios, *supra,* por lo que la obligación al pago de gastos comunes constituye un gravamen sobre el apartamento que subsiste mientras subsista la obligación. Así, señala que habiendo el adquiriente renunciado al mecanismo legal de protección que la ley puso a su alcance, no puede utilizar la doctrina de prescripción para evadir lo que asumió solidariamente.

Colegimos que igualmente carece de mérito el quinto señalamiento de error. La parte apelante sostiene que el balance reclamado podría incluir partidas prescritas correspondientes a períodos anteriores a la adquisición de los apartamentos. Sin embargo, la prescripción constituye una defensa afirmativa que debe ser específicamente alegada y demostrada por quien la invoca.

En este caso, la parte apelante no identificó partidas concretas que entendiera prescritas, no señaló fechas específicas que permitieran evaluar el transcurso del término prescriptivo aplicable ni presentó evidencia que sustentara su planteamiento. Su argumento descansa exclusivamente en la posibilidad de que algunas partidas incluidas en el balance pudieran encontrarse prescritas. Tal alegación resulta especulativa e insuficiente para establecer una controversia genuina sobre hechos materiales. La mera especulación sobre la existencia de partidas prescritas no satisface la carga procesal impuesta a la parte que se opone a una

solicitud de sentencia sumaria. Más aún, tratándose de un adquiriente voluntario sujeto a las disposiciones del Artículo 60 de la Ley de Condominios, *supra,* la parte apelante no puede invocar de forma genérica la doctrina de prescripción para eludir las obligaciones que asumió sin presentar evidencia concreta que sustente tal defensa.

Finalmente, en su último señalamiento de error, la parte apelante cuestiona la imposición de honorarios de abogado por temeridad. Examinado con detenimiento el tracto procesal del caso y los argumentos de las partes, razonamos que estos se sostienen. Como es bien sabido, nuestro derecho procesal civil le concede al TPI la facultad para imponer el pago de honorarios de abogado a la parte litigante que obró de forma temeraria o frívola. Regla 44.1(d) de Procedimiento Civil, 32 LPRA Ap. V, R.44.1(d); *González Ramos v. Pacheco Romero,* 209 DPR 138, 145 (2022). Es decir, cuando existe temeridad, la imposición de honorarios a dicha parte es obligatoria. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 334 (1998). La cuantía de honorarios de abogado concedida no varía en la apelación a menos que esta sea excesiva, exigua o haya constituido un abuso de la discreción del tribunal apelado. *Andamios de PR v. JPH Contractors, Corp.,* 179 DPR 503, 520 (2010); *Ramírez Anglada v. Club Cala de Palmas,* 123 DPR 339, 350 (1989).

Al ser discrecional la facultad de imponer honorarios por temeridad, este tribunal reitera su posición de no intervenir con la apreciación que realizó el foro primario. En este caso, la conducta de la parte apelante movió al tribunal a tal determinación. Esta sanción es producto del examen de la prueba y del proceder de la parte apelante en la tramitación del caso, específicamente ante su negativa a pagar las cuotas asociadas a sus apartamentos, obligando a la parte apelada a recurrir al cobro de lo adeudado por la vía judicial. Ante la ausencia de una determinación irrazonable

y, toda vez que la cuantía de $3,000.00 impuesta no nos parece excesiva, no intervendremos con la decisión del TPI.

En ausencia de pasión, prejuicio o parcialidad, coincidimos con lo pronunciado por el Tribunal de Primera Instancia en su determinación, procede confirmar la *Sentencia* apelada.

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones